UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KELLY E. (RASKE) JOHNSTONE,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | CAUSE NO.: 1:17-CV-190-TLS |
| ) | |
| NANCY A. BERRYHILL,   ) | |
| ACTING COMMISSIONER OF THE   ) | |
| SOCIAL SECURITY   ) | |
| ADMINISTRATION,   ) | |
| ) | |
| Defendant.   ) | |

**OPINION AND ORDER**

Plaintiff Kelly E. (Raske) Johnstone seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her Social Security Disability benefits and erred by overemphasizing her daily living activities, failing to identify scoliosis as a severe impairment, failing to adequately consider the combined effects of her impairments, and failing to credit her lengthy work history.

**BACKGROUND**

On October 28, 2013, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits and, on October 22, 2013, filed a Title XVI application for supplemental security income, alleging disability beginning on August 23, 2012. (R. 22.) Her claim was denied initially on March 11, 2014, and upon reconsideration on April 12, 2014. (*Id.*) On September 3, 2015, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ), along with her uncle, Ken Kitchen. (*Id.*) Amy Kutschback, a

vocational expert (VE), also appeared and testified at the hearing. (*Id.*) On October 29, 2015, the ALJ denied the Plaintiff's application, finding she was not disabled as of her alleged onset date. (R. 22–39.) On February 28, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–4.)

On April 29, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA since her alleged onset date, September 15, 2014. (R. 24.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including degenerative disc disease, obesity,

affective disorder, and learning disorder. (R. 24.) ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (*Id.*) The ALJ found that the Plaintiff's other alleged impairments, including cellulitis in the long finger, scoliosis, and anxiety and depression were not severe impairments. (R. 25, 29.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she can:

> Lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit 6 out of 8 hours; stand and or walk 6 out of 8 hours; occasionally climb ramps and stairs but never climb ladders, ropes or scaffolding; occasionally balance[,] stoop, kneel, crouch, and crawl; avoid unprotected heights and avoid concentrated exposure to dangerous or hazardous machinery, meaning machinery that has exposed moving parts that are used to cut or grind and that fails to stop when human contact is lost, or machinery that has an open flame or hot surfaces that would burn someone if they fell onto them. The claimant can work in the same building as these machines, but cannot work with or around them. The claimant can understand, remember, and carry out rote or routine instructions or tasks that require the

3

>exercise of little independent judgment or decision-making and can be learned from a short demonstration up to 30 days, but cannot make judgments or decisions for more complex or detailed types of tasks, such as analyzing compiled data, directing or planning others' activities, supervising employees, or performing tasks that vary from day to day and require new learning on an unpredictable basis. She must work in a stable setting where there is little change in terms of tools used, the processes employed, or the setting itself, and change, where necessary, is introduced gradually. While all competitive employment has production requirements, should not work in an environment that is stringently production or quota-based, and thus may not perform fast paced assembly line work. She can meet production requirements that allow her to sustain a flexible and goal oriented pace. The claimant can only have occasional and superficial contact with the general public and would not be able to perform a job that entailed work-related interaction and conversations with the general public. Lastly, she should work where supervisors are onsite, readily available, and make periodic checks on workers and are always in the immediate area.

(R. 28.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 30.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id*.) The Plaintiff testified regarding her work history, which included a cashier position she held for seven years prior to 2012, a cashier position she held for two months in 2012, and that she was looking for work at the time of her hearing. (R. 29.) She testified that "she could stand for only about 10 consecutive minutes and she often alternated sitting and standing." (*Id.*) The Plaintiff stated she was able to manage her personal care, sweep her floors with breaks, cook meals, did laundry once a week, washed dishes with breaks, and shopped for groceries once a month. (R. 30.) The Plaintiff's uncle testified that she had a history of back pain and memory problems and that he had to assist her with completing housing paperwork. (*Id.*) He stated that the Plaintiff's "slowness and anxiety

4

interfered with her ability to work." (*Id.*) However, the ALJ noted that the Plaintiff's uncle saw her for only about five weeks per year. (*Id.*)

The ALJ then turned to the objective medical evidence. The ALJ noted that the Plaintiff continued to work for many years after her back surgeries and that the Plaintiff received limited treatment for her alleged physical and mental limitations. (R. 31.) The ALJ acknowledged the Plaintiff's lack of insurance but found that her lack of insurance did not interfere with her ability to obtain treatment for more temporary ailments. (R. 33–34.) The ALJ found that "[t]he record generally suggests that the claimant was seeing a therapist primarily in order to generate evidence for this application and appeal, rather than a genuine attempt to obtain relief from the allegedly disabling symptoms." (R. 34.) The ALJ further found that "the claimant has reported daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," including that she lived alone and was the primary caregiver for her mother prior to her mother's death. (*Id.*) The ALJ also noted inconsistencies in the Plaintiff testimony and concluded that "[t]he alleged severity and duration of claimant's symptoms and limitations are inconsistent with the limited treatment history, objective evidence, and significant activities of daily living." (R. 35.) Thus, the ALJ discounted the Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of her symptoms, finding the Plaintiff not credible. (R. 29–35.) The ALJ also gave only little weight to the Plaintiff's uncle's testimony due to the relatively short periods of time he saw the Plaintiff each year.

The Plaintiff has past relevant work as a cashier, a light SVP 2 occupation. (R. 37.) The VE indicated that the Plaintiff would be unable to perform her past relevant work based on her RFC. (*Id.*) Relying on the VE's testimony, the ALJ found that "considering the claimant's age,

5

education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 37–38.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (R. 39.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it

6

lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff's argues that the ALJ erred in overemphasizing her activities of daily living, failing to identify scoliosis as a severe impairment, failing to consider all of the Plaintiff's impairments in determining the Plaintiff's RFC, and failing to credit her lengthy work history.

**A.   Work History**

"An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder v. Astrue*, No. 3:09-CV-363, 2010 WL 2243248, at *4 (N.D. Ind. June 1, 2010) (*citing Craft*, 539 F.3d at 678); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the

7

finding be reversed.") The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. "[T]he ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Similia v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.R.F. § 404.1529(c)(2)–(4) and *Prochaska*, 454 F.3d at 738).

In this case, the ALJ discounted the Plaintiff's subjective testimony in part due to the fact that the Plaintiff continued to work for a substantial amount of time following her back surgeries and continued to seek work. The ALJ found that the Plaintiff's "self-reports of finding and securing work are highly probative" of the Plaintiff's ability to work. (R. 33.) The Commissioner argues that the ALJ was not required to automatically credit the Plaintiff's testimony based on her work history because work history is just one of many factors an ALJ may use to determine credibility. Further, the Commissioner contends that the ALJ properly considered the Plaintiff's work history, including reviewing her disciplinary records, in the context of other factors such as the objective medical evidence, the Plaintiff's ability to live alone, and her daily living activities.

"There is no inherent inconsistency in being both employed and disabled." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). "An ALJ is not statutorily required to consider a claimant's work history, but a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (internal quotation omitted). "The fact that someone is employed is not proof positive that he is not disabled, for he may be desperate and exerting himself beyond his

8

capacity, or his employer may be lax or altruistic." *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995); *see also Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) (finding argument "would be correct were there a logical incompatibility between working full time and being disabled from working full time"); *Ghiselli*, 837 F.3d at 778 ("Persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition."). "A positive work history makes a claimant *more* credible, and a desire to resume work similarly makes a claimant more credible, not less[.]" *Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017) (internal citations omitted).

In this case, "[t]he ALJ relies upon the faulty premise that if impairments and/or pain were present for years and years and it did not keep Plaintiff from working then, it would not keep [her] from working now," *Springer v. Colvin*, No. 1:13-CV-185, 2014 WL 3075342, at *7 (N.D. Ind. July 2, 2014). The fact that the Plaintiff continued to work despite her alleged limitations seems to have weighed heavily against the Plaintiff in the ALJ's determination. (*See* R. 31–33.) But, "[a] disabled person should not be punished for heroic efforts to work . . . ." *Hawkins*, 326 F.3d at 918; *see also Luttrell v. Berryhill*, No. 1:17-cv-2192, 2018 WL 558541, at *4 (S.D. Ind. Jan. 25, 2018 (A plaintiff "should not [be] discredited for attempting to work despite her physical limitations."). Thus, the Court finds that the ALJ inappropriately held the Plaintiff's continued employment against her instead of weighing it in her favor. Although the ALJ may ultimately come to the same conclusion regarding the Plaintiff's credibility, on remand, the ALJ should weigh the Plaintiff's work history positively rather than as proof that she is not disabled.

## B. Combination of Impairments

The Plaintiff argues that the ALJ erred by failing to consider the combined effects of all of her impairments, including her non-severe impairments, in determining her RFC. When an ALJ determines that one or more of a claimant's impairments are "severe," "the ALJ need[s] to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original). "The fact that [an impairment] standing alone is not disabling is not grounds for the ALJ to ignore [it] entirely—it is [its] impact in combination with [the claimant's] other impairments that may be critical to his claim." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). That is, "a competent evaluation of [a claimant's] application depends on the total effect of all his medical problems." *Golembiewski*, 322 F.3d at 918; *see also Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) ("As we—and other circuits—have emphasized repeatedly . . . the *combined* effects of the applicant's impairments must be considered, including impairments that considered one by one are not disabling.").

"A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *see also Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) (finding that "failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error"); *Terry*, 580 F.3d at 477 (noting that even where impairments would "not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether"); *Verlee v. Astrue*, No. 1:12-CV-45, 2013 WL 1760810, at *5 (N.D. Ind. Apr. 24, 2013) (remanding where "ALJ failed to discuss, and effectively ignored, the Plaintiff's" non-severe impairments when determining the Plaintiff's RFC).

10

At step two of the ALJ's analysis, the ALJ mentioned the Plaintiff's non-severe impairment of cellulitis in the long finger. (R. 25.) The ALJ also noted the Plaintiff's history of anxiety and depression and mentions the Plaintiff's history of scoliosis throughout the opinion. The Plaintiff argues that the ALJ did not consider all of her medically determinable impairments in determining her RFC. Specifically, the Plaintiff argues that, despite finding that her degenerative disk disease was a severe impairment, the ALJ did not include any limitations in the Plaintiff's RFC that would account for such an impairment, especially as it relates to the degeneration in the Plaintiff's cervical spine.

In describing the reasoning behind the RFC determination, the ALJ explained that "[l]imiting claimant to range of light work with reduced postural activity is consistent with her spinal degeneration and obesity." (R. 37.) The ALJ makes a similar statement with regard to the Plaintiff's "scoliosis surgery." (R. 35.) The Plaintiff argues that the ALJ should have included limitations regarding rotation, extension, and flexion of her neck given her history of, and testimony regarding, cervical disc degeneration. "Although the non-severe impairments may not have an effect on the claimant's RFC ultimately, the ALJ [is] required to explain why." *Denton*, 596 F.3d at 423. The Court does not find that the ALJ's language builds a logical bridge between the existence of the Plaintiff's disc degeneration and other impairments and the limitations in her RFC, especially considering that in step two, the ALJ found that the Plaintiff's disc degeneration was a "severe" impairment. Thus, to the extent that the ALJ failed to fully consider the Plaintiff's impairments in combination in determining the Plaintiff's RFC, the Court must remand this case.

## CONCLUSION

Accordingly, to the extent that the ALJ held the Plaintiff's work history against her and failed to build a logical bridge between the Plaintiff's various impairments and her RFC, the Court REVERSES and REMANDS this case. Because the Court is remanding on these issues, it need not consider the reminder of the parties' arguments.

SO ORDERED on April 3, 2018.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT